

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR–13–618

| | | |
|---|---|---|
| LONNIE FLURRY | APPELLANT | **Opinion Delivered** February 19, 2014 |
| V. | | APPEAL FROM THE CRAWFORD COUNTY CIRCUIT COURT [NO. 17-CR-2009-430] |
| STATE OF ARKANSAS | APPELLEE | HONORABLE GARY COTTRELL, JUDGE |
| | | AFFIRMED |

**DAVID M. GLOVER, Judge**

In September 2010, Lonnie Flurry pleaded guilty to second–degree battery and failure to appear. On his plea to the battery offense, he was sentenced to two years in the Arkansas Department of Correction, to be followed by a suspended imposition of sentence for four years; he was also given a three-year suspended imposition of sentence for failure to appear. The suspended sentences were ordered to run concurrently, and the suspended time was conditioned upon good behavior. In July 2012, the State filed a petition to revoke his suspended sentences, alleging Flurry was arrested that month for committing the offense of aggravated assault. After a hearing, the circuit court revoked Flurry's suspended sentences and sentenced him to ten years' incarceration on the failure-to-appear offense and six years' incarceration for the second-degree battery offense, with the sentences to run concurrently. Flurry now appeals, arguing that there was insufficient evidence to support revocation of his

SLIP OPINION

suspended sentences on the basis that he had committed aggravated assault.  We affirm.

In order to revoke probation or a suspension, the circuit court must find by a preponderance of the evidence that the defendant inexcusably violated a condition of that probation or suspension.  *Holmes v. State*, 2012 Ark. App. 451.  In a hearing to revoke, the burden is on the State to prove a violation of a condition of the suspended sentence by a preponderance of the evidence. *Stultz v. State*, 92 Ark. App. 204, 212 S.W.3d 42 (2005).  On appellate review, the trial court's findings are upheld unless they are clearly against the preponderance of the evidence. *Id*.  Because of the lower burden of proof, evidence that is insufficient to support a criminal conviction may be sufficient for the revocation of a suspended sentence.  *Knotts v. State*, 2012 Ark. App. 121.  Appellate courts defer to the trial court's superior position to determine credibility and the weight to be accorded testimony. *Stultz*, *supra*.

In the present case, Roger Halipin testified as follows.  About 6:30 a.m. on April 1, 2012, there was a loud knocking on the front door of his home.  He went to the door and saw Flurry on the porch with no shirt on, talking on his phone.  When Flurry told Halipin that he wanted to talk to him, Halipin agreed but told him that he had a gun (although this was untrue).  According to Halipin, Flurry then told the person he was talking to on the telephone that Halipin had a gun and was going to shoot him.  When Halipin asked Flurry to whom he was speaking, Flurry told him it was 911.  Halipin took the phone and told 911 where Flurry was located and stated that they needed to send someone to Halipin's house. He then looked down and saw Flurry coming toward him with a knife in his hand.  He began

to retreat; he was afraid that he would fall and Flurry would jump on him and stab him. He grabbed the knife at the last possible second, and both he and Flurry fell off the end of the porch. He was cornered between his house and his porch; Flurry was yelling, "stab me"; and Halipin's wife was screaming for him to give her the knife. When Flurry turned his attention to Halipin's wife, Halipin jumped on the porch, raced to the door, and locked the door as Flurry attempted to enter his house. When the police arrived, Flurry told them to shoot him, that he wanted to die. Halipin stated that he was in fear for his life and safety during his encounter with Flurry, but admitted that Flurry had never made any threats to him and that Flurry had told him that he wanted Halipin to shoot him. Halipin also acknowledged that, while Flurry had come at him with a knife, neither he nor his wife was injured in the incident.

Todd Cowan, a deputy sheriff for Crawford County, also testified. He testified that Flurry was handcuffed and placed in the back of Cowan's vehicle. Then, on the way to the jail, Flurry spontaneously told Cowan that he wanted to kill Halipin because he was tired of living, and that when he got out of jail, he was going to find a nice house and kill the occupants so he could live there because he never had a nice house.

A person commits aggravated assault if, under circumstances manifesting extreme indifference to the value of human life, he purposely engages in conduct that creates a substantial danger of death or serious physical injury to another person. Ark. Code Ann. § 5-13-204(a)(1) (Repl. 2013). A person acts purposely with respect to his conduct or a result of his conduct when it is his conscious object to engage in conduct of that nature or to cause

the result. *Banks v. State*, 2011 Ark. App. 249. Therefore, it is the conduct, not the intended result, that must be undertaken purposefully. *Id.*

Flurry argues that he made no threat to Halipin and that there was no proof that he meant Halipin any harm. He contends that although he made statements to the deputy sheriff later regarding his desire to harm Halipin, there was no evidence that those statements were communicated to Halipin at the time of the incident. Given the reduced preponderance-of-the-evidence standard applied in revocation hearings, we affirm the trial court's finding that Flurry committed aggravated assault. There is no requirement that Flurry verbally convey his intentions to Halipin—the fact that he showed up on Halipin's front porch at 6:30 a.m. and pointed a knife at Halipin is sufficient to find by a preponderance of the evidence that he committed aggravated assault—that is, he purposely engaged in conduct that created a substantial danger of serious physical injury to Halipin.

Flurry further argues that the State did not produce any description of the knife or produce the knife at the revocation hearing. There is no requirement that the knife be produced—Halipin identified the use of a knife as a weapon, and his credibility with regard to it was properly determined by the finder of fact.

Affirmed.

WALMSLEY and GRUBER, JJ., agree.

*Lisa-Marie Norris*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Rachel H. Kemp*, Ass't Att'y Gen., for appellee.